UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

REGINA ORSAIO,

                                                    Plaintiff,

                    -against-

NEW YORK STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION, ANTHONY
ANNUCCI, Acting Commissioner of DOCCS, RONALD
HESS, Bureau Chief, and SUSAN HROVAT, Senior Parole
Officer.

                                                    Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

6:17-cv-685 (BKS/TWD)

Plaintiff, REGINA ORSAIO, by her attorneys, Cooper Erving & Savage LLP, for her complaint herein, alleges as follows:

## PRELIMINARY STATEMENT

1.       This is an action alleging discrimination, retaliation and creation of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the New York State Human Rights Law ("NYHRL"), New York Executive Law §290, *et seq.*   Plaintiff seeks mandatory injunctive relief and damages to redress Defendants' discriminatory employment practices.

## JURISDICTIONAL STATEMENT

2.       The jurisdiction of the Court is invoked pursuant to 42 U.S.C. §2000e(5) to protect and redress deprivation of rights secured by 42 U.S.C. §2000e(5).  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§2201 and 2202.

## VENUE

3.       Venue is proper under because the events at issue occurred in the Northern District of New York under 28 U.S.C. §§ 1391(b)(1) and (2).

## PARTIES

4.      Plaintiff, Regina Orsaio, is a female citizen of the United States and a resident of Oneida County in the State of New York.

5.      Plaintiff began her employment as a Parole Officer with the New York State Department of Corrections and Community Supervision ("DOCCS") on February 2, 2006.

6.      Defendant DOCCS is the New York State agency responsible for operating correctional facilities within New York State.

7.      Defendant Anthony J. Annucci is the acting Commissioner of DOCCS.  He is responsible for the operation and administration of all facilities within the department, and the adoption of policies and procedures for the operation of such facilities.  He is sued in his official capacity.

8.      Defendant Ronald Hess is and was, on the dates and times hereinafter mentioned, employed as the Bureau Chief for the DOCCS office in Utica, New York.  He is sued in his official capacity.

9.       Defendant Susan Hrovat is and was, on the dates and times hereinafter mentioned, employed as the Senior Parole Officer for the DOCCS office in Utica, New York.  She is sued in her official capacity.

## PROCEDURAL HISTORY

10.      Plaintiff filed a complaint against Defendants with the New York State Division of Human Rights ("DHR") on or about May 20, 2016 alleging unlawful discriminatory practices related to employment because of sex and sexual orientation.

11.      On November 10, 2016, DHR issued a "no probable cause" determination and the EEOC.

12.      On December 16, 2016, the EEOC issued plaintiff a notice of right to sue adopting

the findings of DHR concerning the allegations in Plaintiff's complaint dated May 20, 2016. A copy of the EEOC Dismissal and Notice of Rights was mailed to the Plaintiff on June 1, 2017. A copy of the EEOC Dismissal and Notice of Rights is annexed hereto and marked as **Exhibit A**.

13.     Plaintiff filed a complaint against Defendants with the New York State Division of Human Rights ("DHR") on or about August 5, 2016 alleging unlawful discriminatory practices.

14.     Pursuant to Title VII and the contracts entered into between DHR and EEOC, plaintiff's complaint filed with the DHR was concurrently filed with the EEOC.

15.     The DHR dismissed plaintiff's complaint on the basis of administrative convenience pursuant to New York State Executive Law §297(9) by Order dated March 15, 2017, thereby granting plaintiff the right to pursue her Human Rights Law remedies in Court. A copy of the Order is annexed hereto and marked as **Exhibit B**.

16.     On May 2, 2017, the EEOC issued plaintiff a notice of right to sue concerning the allegation in Plaintiff's August 5, 2016 complaint. A copy of the EEOC Dismissal and Notice of Rights was mailed to Plaintiff on June 1, 2017. A copy of the EEOC Dismissal and Notice of Rights is annexed hereto and marked as **Exhibit C**.

## FACTUAL ALLEGATIONS

17.     Ms. Orsaio is an employee of DOCCS.

18.     In April 2006, Ms. Orsaio started working in the field as a Parole Officer Trainee in the Syracuse Area Office.

19.     Ms. Orsaio excelled in her position and was the first probationary officer, out of the new recruit class, to be promoted to permanent title in the Syracuse Area Office. After her first year as a parole officer, Ms. Orsaio was selected to supervise specialized domestic violence caseload.

20.     In March 2009, Bureau Chief John Pick selected Ms. Orsaio to transfer to the Utica Area Office to supervise specialized sex offenders caseload.

21.     Defendant Hess was a Senior Parole Officer in the Utica Area Office, when Ms. Orsaio began her assignment in March 2009.

22.     From 2009 through 2012, Ms. Orsaio continued to receive outstanding performance evaluations.  In or about 2012, Ms. Orsaio was commended for her outstanding work on a case involving a parolee who had raped and murdered a victim.  This case prompted an investigation by the Governor's Office, which found no errors on Ms. Orsaio's case file.

23.     In or about 2013, defendant Hess became the Bureau Chief for the Utica Area Office.

24.     Defendant Hess learned that Ms. Orsaio was homosexual in or about 2014.  After learning that Ms. Orsaio was homosexual, defendant Hess' treatment of Ms. Orsaio changed and became hostile.

25.     Ms. Orsaio learned from her colleagues that Mr. Hess did not like her and that he would make sure that she would not be assigned to any caseload or job assignments that she had any interest.

26.     In or about 2015, Ms. Orsaio was assigned to "duty day" with two other male officers.  Duty day is a long report day (approximately 10 hours long) and is assigned based on the officers' seniority.  It was the policy of DOCCS to give senior officers priority to transfer duty days.

27.     In 2015, Ms. Orsaio requested to transfer to an open Tuesday duty day slot in order to avoid the continuing harassment by male officers working duty days with her on Mondays.  The two male officers would consistently taunt Ms. Orsaio and tell her how much defendant Hess hated her.

28.     Ms. Orsaio's request to transfer to Tuesday duty days was denied by defendant Hess. Instead, defendant Hess assigned the Tuesday duty day to a new officer transferring to Utica, which was against the office policy to allow the most senior officers to apply for transfers first.

29.     When Ms. Orsaio questioned defendant Hess' conduct, she was informed that the policy of giving senior officers priority was no longer in place.  Instead, defendant Hess told Ms. Orsaio that any officer taking over caseload will also take over the same duty day as the prior officer.

30.     Ms. Orsaio knows that at least two male officers (Lutz and Radalljas) were allowed to take over caseloads from officers that were different from their assigned duty days.

31.     In or about 2011, Ms. Orsaio was supervising strict intensive supervision caseload of sex offenders ("SIST").  SIST is a 10 to 1 ratio (10 parolees to 1 officer) supervision caseload of parolees with sex crimes and mental abnormalities.  Ms. Orsaio was the only SIST parole officer in the Utica area office.  Sex offender caseloads, as a rule, have a 25 to 1 ratio.  In the Utica area office, all sex offender caseloads (non-SIST caseload) were supervised by male officers.

32.     After defendant Hess learned about Ms. Orsaio's sex orientation, he raised Ms. Orsaio's caseload numbers disproportionally as compared to her male counterparts.  As a result, Ms. Orsaio requested to be removed from her SIST caseload, but defendant Hess denied her request.

33.     Defendant Hess blocked Ms. Orsaio's attempt to transfer to the Herkimer County caseload.  Defendant Hess waited approximately five (5) months to fill the position in Herkimer County until he was able to convince a male officer senior to Ms. Orsaio to accept the assignment.

34.     Ms. Orsaio sought Regional Director Marco Ricci's intervention and Mr. Ricci directed defendant Hess to move Ms. Orsaio from her SIST caseload to a different caseload. Defendant Hess waited three (3) months before doing so.

35.     Defendant Hess offered Ms. Orsaio to transfer to a caseload that had a disproportionate amount of Spanish speaking parolees.  It was the practice of DOCCS to divide Spanish speaking parolees amongst the parole officers evenly.  Ms. Orsaio felt that defendant Hess' transfer offer into that caseload was intended to make her job even more difficult.

5

36.     Ms. Orsaio asked another officer why defendant Hess hated her so much and the officer's reply was "because you don't like cock."

37.     In August 2015, Ms. Orsaio won a bid to have the Otsego County caseload assigned to her.  Defendant Hess blocked Ms. Orsaio's transfer alleging that no new officers were required at the Otsego County area office.  Instead, a male officer was assigned the Otsego County caseload and was paid overtime.  Four days after Ms. Orsaio left for polygraph school, defendant Hess assigned another male officer to the Otsego County area office.

38.     When an overtime detail opportunity became available to the top three most senior parole officers at the Utica area office, which included Ms. Orsaio, defendant Hess directed Senior Officer Pezdek to only take the top two officers, thereby excluding Ms. Orsaio from the overtime opportunity.

39.     By October 2015, Ms. Orsaio was ostracized by her fellow officers.  During that same time, a picture of Ms. Orsaio with a beard and mustache was posted on the office bulletin board.

40.     In November 2015, Ms. Orsaio applied for a polygraph position in an effort to leave the unfriendly and hostile atmosphere in the Utica area office.

41.     In February 2016, while attending polygraph school, Ms. Orsaio learned that Defendant Hess announced that he was going to assign Ms. Orsaio all the Certificate of Relief Reports ("CRR") and Local Conditional Release Reports ("LCR") upon her return.  These reports are very time consuming, so it had always been the practice to rotate such assignments evenly between parole officers.

42.     Ms. Orsaio also learned that defendant Hess was observed mimicking the way Ms. Orsaio walked in front of two office secretaries causing them all to laugh.

43.     In March 2016, Ms. Orsaio graduated from polygraph school and was assigned to

the Utica area office as a polygraph examiner/parole officer for the Central New York Region.  As polygraph examiner, Ms. Orsaio is responsible to schedule, coordinate, conduct polygraph exams, and prepare reports of such exams.

44.     Upon her return to the Utica office in March 2016, defendant Hess assigned numerous CRR and LCR reports to Ms. Orsaio with the knowledge that Ms. Orsaio had more than ten (10) polygraph referrals she needed to complete as a part of her new job responsibilities.  The LCR reports were dated February and early March, which showed that defendant Hess held onto these reports until Ms. Orsaio returned from polygraph school

45.     In May 2016, defendant Hrovat was promoted as Senior Parole Officer at the Utica area office and became Ms. Orsaio's direct supervisor.

46.     Defendant Hrovat told Ms. Orsaio that she was expected to perform 20 polygraph examinations a month, when no other polygraph examiner completed 20 polygraph examinations per month.

47.     During the 11 years Ms. Orsaio has been completing CRR reports, she was never asked by a supervisor to do the reports over.  For the first time in Ms. Orsaio's career, defendants Hess and Hrovat required Ms. Orsaio to do her CRR reports over.

48.     Defendant Hrovat also denied Ms. Orsaio's request for overtime payments alleging that Ms. Orsaio did not have enough work to justify being paid overtime.  Defendant Hrovat requested Ms. Orsaio to submit a daily calendar, and to fill out her duties on an hourly basis, which was never required of any parole officer in the Utica area office.

49.     Defendant Hrovat also lectured Ms. Orsaio on time management by referring to a time when she was conducting an investigation of a transgender parolee, saying she could not tell if she was a "he or she or she or he."  Ms. Orsaio understood defendant Hrovat's comment as a mockery of Ms. Orsaio's sexual orientation.

50.     In or about February or March 2016, DOCCS designated a vehicle to the Utica office to be assigned to the polygraph officer, Ms. Orsaio.  However, defendant Hess assigned the vehicle to a senior male officer, who does not conduct field work, requiring Ms. Orsaio to load and unload her polygraph equipment from her vehicle and onto a lot vehicle before she could conduct her field work.

51.     Although it is desirable for polygraph examiners to conduct polygraph examinations throughout the Central New York Region, including St. Lawrence County, Albany and Plattsburgh, Defendants Hess and Hrovat restricted Ms. Orsaio's work to the Syracuse area, which prevented Ms. Orsaio from earning overtime compensation.

52.     Defendant Hrovat also denied Ms. Orsaio a flexible work scheduled, which every other parole officer is allowed to have.  When Ms. Orsaio told defendant Hrovat that she felt that she was not being treated fairly, defendant Hrovat replied "fair is where you go on rides and eat cotton candy."

53.     In May 2016, Ms. Orsaio requested to be transferred out of the Utica area office due to the unequal and hostile environment she was subjected to by Defendants Hess and Hrovat.

54.     When Ms. Orsaio's request for transfer was denied, she filed her complaint with the DHR on May 20, 2016.

55.     After Ms. Orsaio filed her complaint with DHR, Ms. Orsaio received the first "unsatisfactory" performance evaluation of her career with DOCCS.  Defendant Hrovat signed Ms. Orsaio's annual performance evaluation although she had only supervised Ms. Orsaio for approximately 8 weeks.  Also, Ms. Hrovat had no polygraph background to evaluate Ms. Orsaio's performance.

56.     In June 2016, Ms. Orsaio asked defendant Hrovat why she was supporting defendant Hess' treatment of her.  In response, defendant Hrovat stated "at least I know I am going to have a

job next year." After Ms. Orsaio asked if she was threatening her job, defendant Hrovat ordered her to leave her office.

57.     On August 5, 2016, Ms. Orsaio filed a complaint with DHR alleging discrimination and retaliation.

58.     After filing her complaint with DHR, defendant Hess denied Ms. Orsaio's mileage reimbursement request while approving every other officer's request for the same travel. Prior to August 2016, Ms. Orsaio had never had her mileage reimbursement request denied.

59.     In September 2016, after her attorney wrote a letter to Deputy Commissioner Kevin Bruen, Ms. Orsaio was transferred from the Utica to the Syracuse area office.

60.     Despite having transferred from the Utica to the Syracuse office, Ms. Orsaio continued to suffer retaliation from defendant Hess. While in Syracuse, Ms. Orsaio received a counseling memorandum for conduct that allegedly happened in Utica prior to her transfer. This was the first counseling memorandum Ms. Orsaio received in her 11 years with DOCCS.

61.     Ms. Orsaio is currently traveling 200 miles per day as a result of defendants Hess and Hrovat's conduct. Ms. Orsaio's home is approximately five (5) miles away from the Utica area office.

## AS FOR A FIRST CAUSE OF ACTION
### (Discrimination under Title VII)

62.     Plaintiff is a member of a protected class (female).

63.     Plaintiff was highly qualified for the position she held. Before being placed under the direct supervision of defendants Hess and Hrovat, Ms. Orsaio was commended for her work and received satisfactory evaluations.

64.     Plaintiff has been denied benefits otherwise provided to her male counterparts under circumstances that give rise to an inference of discrimination on the based plaintiff's gender and/or

because the plaintiff did not conform to the traditional gender stereotypes.

65.     Defendants' actions as set forth herein constitute unlawful discrimination of the basis of sex in violation of Title VII of the Civil Rights Act of 1964.

66.     Defendant's actions and failures constitute a continuing violation of Title VII.

67.     There is no lawful justification for the denial of employment benefits otherwise provided to the plaintiff's male counterparts.

68.     Plaintiff's sex was a substantial factor in the denial of employment benefits otherwise provided to plaintiff's male counterparts.

69.     Defendant DOCCS is liable for its acts and the actions of Mr. Hess and Ms. Hrovat under the doctrine of *respondeat superior*.

70.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost sick and vacation time, lost benefits including retirement contributions, health benefits, lost pay for failure to promote, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation, and reasonable costs and attorney's fees.

## AS FOR A SECOND CAUSE OF ACTION
### (Hostile Work Environment under Title VII)

71.     Repeats and realleges each of the foregoing allegations as if fully set forth herein.

72.     Defendants Hess and Hrovat created a hostile work environment for Plaintiff based on the Plaintiff's gender and/or because the plaintiff did not conform to the traditional gender stereotypes.

73.     Numerous opportunities Plaintiff's advancement were thwarted because of favoritism to male employees.

74.     The actions of defendant's agents and employees, as set forth above, were so severe and pervasive that they altered the terms and conditions of Plaintiff's employment.

75.     Defendant's actions, and the actions of its agents and employees, as set forth above, created a workplace that was permeated with hostility, ridicule, and insult against female employees and employees, such as the Plaintiff, who did not conform to traditional gender stereotypes.

76.     By virtue of its failure to promptly and adequately investigate complaints of discrimination and harassment by Plaintiff, or to respond to a commonly known inappropriate and discriminatory culture within DOCCS, Defendant is liable for the harassment perpetrated against Plaintiff by its agents and employees.

77.     Defendant's actions and failures constitute a continuing violation of Title VII.

78.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost sick and vacation time, lost benefits including retirement contributions, health benefits, lost pay for failure to promote, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation and reasonable costs and attorney's fees.

## AS FOR A THIRD CAUSE OF ACTION
### (Retaliation under Title VII)

79.     Repeats and realleges each of the foregoing allegations as if fully set forth herein.

80.     Plaintiff engaged in protected activity when she complained of unlawful discrimination and harassment because of sex.

81.     Plaintiff's complaint of discrimination was a proximate cause of the unsatisfactory performance evaluation in July 2016 in part because her complaint was followed closely in time by her unsatisfactory performance evaluation.

82.     The issuance of an unsatisfactory performance evaluation to the plaintiff constitutes an adverse employment action in violation of Title VII.

83.     Defendants' proffered legitimate business reason for the plaintiff's unsatisfactory evaluation

was pretextual for the reasons set forth above and because it was contrived to justify the plaintiff's unsatisfactory performance evaluation.

84.     Plaintiff was retaliated against because she raised the issue of sex discrimination in violation of Title VII.

85.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost sick and vacation time, lost benefits including retirement contributions, health benefits, lost pay for failure to promote, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation and reasonable costs and attorney's fees.

**AS FOR A FOURTH CAUSE OF ACTION**
**(Sex and Sexual Orientation Discrimination in Violation of NYHRL)**

86.     Repeats and realleges each of the foregoing allegations as if fully set forth herein.

87.     Defendants' actions as set forth above constitute discrimination on the basis of sex and sex orientation in violation of the New York State Human Rights Law ("NYHRL").

88.     Defendants' actions as set forth above constitute a continuing violation of the NYHRL.

89.     Defendant's actions as set forth above resulted in Plaintiff's loss of advancement opportunities, employment benefits and additional compensation.

90.     Defendants Hess and Hrovat are personally liable to the Plaintiff as aiders and abettors pursuant to Section 296(6) of the NYHRL.

91.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost sick and vacation time, lost benefits including retirement contributions, health benefits, lost pay for failure to promote, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation and reasonable costs and attorney's fees.

## AS FOR A FIFTH CAUSE OF ACTION
### (Hostile Work Environment in Violation of NYHRL)

92.     Repeats and realleges each of the foregoing allegations as if fully set forth herein.

93.     Defendants Hess and Hrovat created a hostile work environment for Plaintiff based on the Plaintiff's gender and/or because the plaintiff did not conform to the traditional gender stereotypes.

94.     Numerous opportunities of Plaintiff's advancement were thwarted because of favoritism to male employees.

95.     The actions of defendant's agents and employees, as set forth above, were so severe and pervasive that they altered the terms and conditions of Plaintiff's employment.

96.     Defendant's actions, and the actions of its agents and employees, as set forth above, created a workplace that was permeated with hostility, ridicule and insult against female employees and employees, such as the Plaintiff, who did not conform to traditional gender stereotypes.

97.     By virtue of its failure to promptly and adequately investigate complaints of discrimination and harassment by Plaintiff or to respond to a commonly known inappropriate and discriminatory culture within DOCCS, Defendant is liable for the harassment perpetrated against Plaintiff by its agents and employees.

98.     Defendant's actions and failures constitute a continuing violation of the NYHRL.

99.     By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost sick and vacation time, lost benefits including retirement contributions, health benefits, lost pay for failure to promote, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation and reasonable costs and attorney's fees.

## AS FOR A SIXTH CAUSE OF ACTION
### (Retaliation under the NYHRL)

100.    Repeats and realleges each of the foregoing allegations as if fully set forth herein.

101.    Plaintiff engaged in protected activity when she complained of unlawful discrimination and harassment because of sex.

102.    Plaintiff's complaint of discrimination was a proximate cause of the unsatisfactory performance evaluation in July 2016 in part because her complaint was followed closely in time by her unsatisfactory performance evaluation.

103.    The issuance of an unsatisfactory performance evaluation to the plaintiff constitutes an adversary employment action in violation of the NYHRL.

104.    Defendants' proffered legitimate business reason for the plaintiff's unsatisfactory evaluation was pretextual for the reasons set forth above and because it was contrived to justify the plaintiff's unsatisfactory performance evaluation.

105.    Plaintiff was retaliated against because she raised the issue of sex discrimination in violation of Title VII.

106.    By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost sick and vacation time, lost benefits including retirement contributions, health benefits, lost pay for failure to promote, lost opportunities for advancement, compensatory damages for emotional and psychological injuries and humiliation and reasonable costs and attorney's fees.

## AS FOR A SEVENTH CAUSE OF ACTION
### (Punitive Damages)

107.    Repeats and realleges each of the foregoing allegations as if fully set forth herein.

108.    Defendant's discriminatory actions were intentional, wanton, willful, reckless, and malicious, and demonstrated utter and heedless disregard for plaintiff's right to be free from sex

discrimination and retaliation in the workplace.

109.    Plaintiff is entitled to punitive damages from the individual defendants under Title VII.

WHEREFORE, Plaintiff demands Judgment against Defendants as follows:

(A)      Declaring that Defendants' actions are in violation of the Title VII and the NYHRL and enjoining Defendants from future violations thereof; and

(B)      On the First Cause of Action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorney's fees; and

(C)      On the Second Cause of Action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorney's fees; and

(D)      On the Third Cause of Action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorney's fees; and

(E)      On the Fourth Cause of Action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorney's fees; and

(F)      On the Fifth Cause of Action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorney's fees; and

(G)      On the Sixth Cause of Action, monetary damages in an amount to be determined at trial, together with reasonable costs and attorney's fees; and

(H)      Declaring that Defendants' discriminatory actions were intentional, wanton, willful, reckless, and malicious, and demonstrated utter and heedless disregard for plaintiff's right to be free from sex discrimination and retaliation in the workplace, thus entitling plaintiff to punitive damages against the individual defendants.

(I)     Such other legal and equitable relief as the Court deems appropriate under the

circumstances and which is available by law or statute.

Dated:  Albany, New York                    **COOPER ERVING & SAVAGE LLP**
         June 23, 2017

                                       By:  _/s/ Carlo A. C. de Oliveira_____
                                            Carlo A. C. de Oliveira
                                            Bar Roll No.: 516271
                                            Local Counsel for Plaintiffs & Class Members
                                            39 North Pearl Street, Fourth Floor
                                            Albany, New York 12207
                                            Telephone: (518) 449-3900
                                            Facsimile: (518) 432-3111
                                            E-mail: Cdeoliveira@coopererving.com

                                                                                245787