**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**REGINA ORSAIO,**

                                        **Plaintiff,**                    **6:17-cv-685 (BKS/TWD)**

**v.**

**NEW YORK STATE DEPARTMENT OF**
**CORRECTIONS AND COMMUNITY**
**SUPERVISION, ANTHONY ANNUCCI, Acting**
**Commissioner of DOCCS, RONALD HESS, Bureau**
**Chief, and SUSAN HROVAT, Senior Parole Officer,**

                                        **Defendants.**

---

**APPEARANCES:**

*For Plaintiff:*
**Carlo A. C. de Oliveira, Esq.**
Cooper Erving & Savage LLP
39 North Pearl Street, Fourth Floor
Albany, NY 12207

*For Defendants:*
**Aimee Paquette, Esq.**
Hon. Eric T. Schneiderman
Attorney General of the State of New York
Syracuse Regional Office
615 Erie Blvd. West, Suite 102
Syracuse, NY 13204

**Hon. Brenda K. Sannes, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Regina Orsaio brings this action against Defendants New York State Department

of Corrections and Community Supervision ("DOCCS"), DOCCS Acting Commissioner

Anthony J. Annucci in his official capacity, DOCCS Utica Area Office Bureau Chief Ronald

Hess in his official capacity, and DOCCS Utica Area Office Senior Parole Officer Susan Hrovat in her official capacity, alleging that she suffered employment discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the New York State Human Rights Law (the "NYHRL"), N.Y. Exec. Law §§ 290-301.[1] (*See* Dkt. No. 1). Plaintiff seeks compensatory damages, punitive damages, and injunctive relief. (*Id.* ¶ 109).

Defendants move for a partial dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) Plaintiff's Title VII employment discrimination and hostile work environment claims[2] are time-barred (Dkt. No. 8, at 1; Dkt. 8-4, at 4-5); and (2) even if the claims are timely, they should be dismissed because Plaintiff has failed to exhaust her administrative remedies. (Dkt. No. 8-4, at 5-6). For the reasons stated below, the motion is denied.

## II.    BACKGROUND

### A.    Factual Allegations[3]

Plaintiff joined DOCCS in April 2006 as a Parole Officer Trainee in the Syracuse Area Office. (Dkt. No. 1, ¶¶ 17-18). After her first year as a Parole Officer, she was selected to supervise specialized domestic violence cases and, in March 2009, was transferred to the Utica Area Office to supervise specialized sex offender cases. (*Id.* ¶¶ 19-20). From 2009 to 2012, she

---

[1] Specifically, aside from a request for punitive damages, Plaintiff's complaint (the "Federal Complaint") asserts causes of action for: (1) discrimination under Title VII based on gender and nonconformance to traditional gender stereotypes; (2) hostile work environment under Title VII based on gender and nonconformance to traditional gender stereotypes; (3) retaliation under Title VII; (4) sex and sexual orientation discrimination under the NYHRL; (5) hostile work environment under the NYHRL based on gender and nonconformance to traditional gender stereotypes; and (6) retaliation under the NYHRL. (Dkt. No. 1, ¶¶ 62-106).

[2] Defendants seek to dismiss only the first and second causes of action. (*See* Dkt. No. 8).

[3] Unless otherwise specified, the facts are taken from the Federal Complaint and assumed to be true for purposes of this motion. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).

received "outstanding performance evaluations" and was "commended for her outstanding work" in one case in particular. (*Id.* ¶ 22).

In 2014, Defendant Hess—who had been promoted from Senior Parole Officer to Bureau Chief for the Utica Area Office the year before—learned of Plaintiff's homosexuality; his treatment of her changed and he became hostile. (*Id.* ¶¶ 23-24). Plaintiff's colleagues told her that "Mr. Hess did not like her and that he would make sure that she would not be assigned to any caseload or job assignments that she had any interest." (*Id.* ¶ 25).

In 2015, Plaintiff was assigned to "duty day"—a report day lasting approximately 10 hours—with two male officers on Mondays. (*Id.* ¶¶ 26-27). As the two male officers would "consistently taunt" Plaintiff and "tell her how much defendant Hess hated her," Plaintiff requested to transfer to an open Tuesday duty day slot, but Defendant Hess denied her request and assigned a new officer to that slot instead, allegedly in violation of "office policy to allow the most senior officers to apply for transfers first." (*Id.* ¶¶ 27-28). Defendant Hess informed her that, under the new policy, an officer taking over the caseload of a departing officer would be assigned to the duty day of that departing officer. (*Id.* ¶ 29). Plaintiff, however, knew of at least two male officers who had taken over the caseload of other officers, yet were assigned duty days that were different from those officers' duty days. (*Id.* ¶ 30).

After Defendant Hess learned of Plaintiff's sexual orientation, he raised Plaintiff's "caseload numbers disproportionally as compared to her male counterparts," even though Plaintiff was the only parole officer in the Utica Area Office in charge of the strict and intensive supervision and treatment ("SIST") sex offender caseload—i.e., a "caseload of parolees with sex crimes and mental abnormalities"—while her male counterparts supervised non-SIST sex

offender caseloads. (*Id.* ¶¶ 31-32). When she asked to have her SIST caseload removed, Defendant Hess denied her request. (*Id.* ¶ 32).

Plaintiff tried to "transfer to the Herkimer County caseload," but Defendant Hess "blocked" her attempt and filled the position five months later after "convinc[ing] a male officer senior to [Plaintiff] to accept the assignment." (*Id.* ¶ 33). Defendant Hess moved Plaintiff "from her SIST caseload to a different caseload" at the direction of DOCCS Regional Director Marco Ricci, but "Defendant Hess waited three (3) months before doing so." (*Id.* ¶ 34). Despite the "practice of DOCCS to divide Spanish speaking parolees amongst the parole officers evenly," Defendant Hess suggested that Plaintiff "transfer to a caseload that had a disproportionate amount of Spanish speaking parolees," and Plaintiff interpreted this transfer offer as "intended to make her job even more difficult." (*Id.* ¶ 35). Asked by Plaintiff why Defendant Hess "hated her so much," a fellow officer said it was "because you don't like cock." (*Id.* ¶ 36). When Plaintiff "won a bid to have the Otsego County caseload assigned to her" in August 2015, Defendant Hess blocked the caseload transfer on the ground that "no new officers were required at the Otsego County area office"; yet, the caseload was assigned to a male officer who was paid overtime, and Defendant Hess later assigned another male officer to that office. (*Id.* ¶ 37). Further, at the direction of Defendant Hess, Plaintiff was excluded from an "overtime detail opportunity" at the Utica Area Office. (*Id.* ¶ 38).

By October 2015, Plaintiff's fellow officers had ostracized her, and a picture of Plaintiff "with a beard and mustache" was posted on the office bulletin board. (*Id.* ¶ 39). To escape "the unfriendly and hostile atmosphere" in the Utica Area Office, Plaintiff applied for a polygraph position in November 2015. (*Id.* ¶ 40). In February 2016, Plaintiff learned that Defendant Hess would assign her "all the Certificate of Relief Reports ("CRR") and Local Conditional Release

Reports ("LCR")" when she returned from polygraph school, even though "it had always been the practice to rotate such assignments evenly between parole officers." (*Id.* ¶ 41). Further, she learned that Defendant Hess had been "observed mimicking the way [Plaintiff] walked in front of two office secretaries causing them all to laugh." (*Id.* ¶ 42). Upon graduating from polygraph school in March 2016, Plaintiff became a "polygraph examiner/parole officer for the Central New York Region" at the Utica Area Office. (*Id.* ¶ 43). Despite Plaintiff's new job responsibilities as a polygraph examiner, Defendant Hess assigned Plaintiff "numerous CRR and LCR reports" that he had "held onto" until her return. (*Id.* ¶ 44). He also assigned a DOCCS vehicle that had been designated for Plaintiff's polygraph field work to a senior male officer that did not conduct field work. (*Id.* ¶ 50).

Plaintiff obtained a new supervisor in May 2016, when Defendant Hrovat became Senior Parole Officer at the Utica Area Office. (*Id.* ¶ 45). Defendant Hrovat asked Plaintiff "to perform 20 polygraph examinations a month," a higher number of examinations than what other polygraph examiners completed. (*Id.* ¶ 46). Additionally, both Defendants Hess and Hrovat asked that Plaintiff "do her CRR reports over"—the first such request in Plaintiff's career. (*Id.* ¶ 47). Defendant Hrovat denied Plaintiff's overtime payment requests and asked Plaintiff to keep track of her duties on an hourly basis, a task that no other parole officer in the Utica Area Office had to do. (*Id.* ¶ 48). On one occasion, Defendant Hrovat "lectured [Plaintiff] on time management by referring to a time when she was conducting an investigation of a transgender parolee, saying she could not tell if she was a 'he or she or she or he,'" and Plaintiff interpreted the comment "as a mockery of [Plaintiff's] sexual orientation." (*Id.* ¶ 49). Because Defendants Hess and Hrovat restricted her work to the Syracuse area, Plaintiff was not permitted to earn overtime compensation by conducting polygraph examinations in other parts of Central New

York. (*Id.* ¶ 51). Further, Defendant Hrovat did not allow Plaintiff, unlike other parole officers, to have a flexible work schedule. (*Id.* ¶ 52).

As a result of "the unequal and hostile environment" created and permitted by Defendants Hess and Hrovat, Plaintiff requested a transfer out of the Utica Area Office in May 2016. (*Id.* ¶ 53). Her transfer request was denied, prompting Plaintiff to file a complaint with the New York State Division of Human Rights (the "DHR") on May 20, 2016 (the "First Administrative Complaint"), alleging employment discrimination. (*Id.* ¶¶ 10, 54). According to a copy of the First Administrative Complaint, submitted by Defendants in support of their motion to dismiss,[4] Plaintiff charged DOCCS "with an unlawful discriminatory practice relating to employment . . . because of sex, sexual orientation." (Dkt. No. 8-2, at 1). In the section describing the basis of discrimination, Plaintiff checked off the "Sexual Orientation" box and wrote in "Gay Female." (*Id.* at 3). The "Sex" box was left blank. (*Id.*).

Defendant Hrovat allegedly retaliated against Plaintiff for filing the First Administrative Complaint (*id.* ¶¶ 55-56), causing Plaintiff to file a second complaint with the DHR (the "Second Administrative Complaint"), alleging discrimination and retaliation (*id.* ¶ 57).[5] Subsequently, Defendant Hess allegedly subjected Plaintiff to further retaliation. (*Id.* ¶¶ 58, 60). In September 2016, after her attorney wrote a letter to DOCCS Deputy Commissioner Kevin Bruen, Plaintiff was transferred to the Syracuse Area Office, and she currently travels approximately 200 miles each day to commute to and from her home in Utica. (*Id.* ¶¶ 59, 61).

---

[4] As discussed below, the Federal Complaint incorporates by reference the First Administrative Complaint; therefore, the Court takes cognizance of that document in deciding the present motion. *See infra* Part IV.A.

[5] Plaintiff filed her administrative complaints concurrently with the U.S. Equal Employment Opportunity Commission (the "EEOC") by authorizing DHR to accept the complaints on the EEOC's behalf. (*See* Dkt. No. 1, ¶ 14 (noting that the Second Administrative Complaint was "concurrently filed with the EEOC")); (Dkt. No. 8-2, at 1 (indicating that Plaintiff authorized DHR to accept the First Administrative Complaint on behalf of the EEOC)).

### B.    Procedural History

Under the NYHRL, the DHR must investigate claims of unlawful discriminatory practices and determine "whether there is probable cause to believe that the [respondent] . . . has engaged or is engaging in an unlawful discriminatory practice." N.Y. Exec. Law § 297(2)(a). With regard to the First Administrative Complaint, the DHR issued a determination that there was "no probable cause" on November 10, 2016. (*See* Dkt. No. 1, ¶ 11). The EEOC subsequently adopted the DHR's findings and issued a "Dismissal and Notice of Rights" (referred to as a right-to-sue letter) on December 16, 2016, indicating that Plaintiff "may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court" and that the "lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice; or your right to sue based on this charge will be lost." (Dkt. No. 1-1, at 2 (emphasis omitted)).

With regard to the Second Administrative Complaint, the DHR found probable cause, but Plaintiff's counsel requested an "administrative convenience dismissal" in order to "commence a federal action" (Dkt. No. 1-2, at 5-6), which the DHR granted on March 30, 2017 (Dkt. No. 1-2, at 2-3; *see* Dkt. No. 1, ¶ 15). On May 2, 2017, the EEOC issued a "Dismissal and Notice of Rights" noting that Plaintiff "wishe[d] to pursue matter in Federal District Court," and again indicating that Plaintiff had 90 days from receipt of the notice to file suit in federal court. (Dkt. No. 1-3, at 2; *see* Dkt. No. 1, ¶ 16).

Plaintiff alleges that both of the EEOC's notices were "mailed to Plaintiff on June 1, 2017." (Dkt. No. 1, ¶¶ 12, 16).[6] Plaintiff filed her Federal Complaint on June 23, 2017. (Dkt. No. 1).

---

[6] Defendants assert, by way of an attorney declaration in support of their motion to dismiss, that DOCCS received a copy of the first EEOC notice on December 20, 2016. (Dkt. No. 8-1, ¶ 6). In her affidavit in opposition, Plaintiff asserts that she is "confident that [she] never received the EEOC Right-to-Sue Letter related to [her First Administrative Complaint] in December 2016," and that she "did not receive a Right-to-Sue letter from the Attorney

## III.     STANDARD OF REVIEW

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). When deciding a motion to dismiss, the Court's review is ordinarily limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Specifically, the Court may consider a plaintiff's charges with the DHR and the EEOC that are either incorporated by reference or otherwise integral to the complaint without converting a motion to dismiss for failure to state a claim into one for summary judgment. *See Fichera v. State Univ. of N.Y.*, No. 04-cv-0078, 2007 WL 2874450, at *4, 2007 U.S. Dist. LEXIS 72186, at *10 (N.D.N.Y. Sept. 27, 2007).

---

General." (Dkt. No. 9-1, ¶ 4). Further, she states that "the Right-to-Sue Letter related to [her Second Administrative Complaint] that was sent to [her] attorney on June 1, 2017, had [her] address as being at 10 Foery Drive, Apt. 1001, Utica, New York 13501," which "is not [her] address." (*Id.* ¶ 5). These assertions are outside the pleadings and will not be considered in deciding Defendants' motion to dismiss for failure to state a claim. *See Car-Freshner Corp. v. Getty Images, Inc.*, 822 F. Supp. 2d 167, 174-75 (N.D.N.Y. 2011) ("The Court need not linger on . . . the sworn factual assertions contained in the affidavit of Defendants' counsel[]: the Court finds that it may not properly consider that information on a motion to dismiss for failure to state a claim.").

## IV.    DISCUSSION

### A.    Requested Conversion to Summary Judgment

In her opposition to the motion to dismiss, Plaintiff contends that because "Defendants' motion to dismiss is accompanied by counsel's declaration containing extrinsic documents outside the pleadings"—specifically, the First Administrative Complaint (Dkt. No. 8-2) and Defendants' copy of the EEOC's December 16, 2016 notice (Dkt. No. 8-3)—the Court must convert the motion to dismiss to one for summary judgment if the Court "considers the extrinsic documents." (Dkt. No. 9, at 5-6 (citing Fed. R. Civ. P. 12(d)). Defendants reply that documents that are "attached to the complaint," "incorporated into the complaint by reference," or "integral to the complaint" are considered part of the pleadings, and therefore the Court should not convert Defendant's motion to dismiss into a summary judgment motion. (Dkt. No. 11, at 5-6 (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002))).

To begin with, the Court observes that Plaintiff attached her own copy of the EEOC's December 16, 2016 notice to her Federal Complaint (*see* Dkt. No. 1-1, at 2). There are differences between Plaintiff's and Defendants' copies of the EEOC notice which appear to raise issues of fact.[7] The Court will therefore only rely on Plaintiff's copy for purposes of deciding this motion. Plaintiff's copy of the notice includes a copy of an envelope addressed to Plaintiff's counsel from the EEOC and postmarked June 1, 2017. (Dkt. No. 1-1, at 3).

With regard to the First Administrative Complaint, Plaintiff makes specific references to it in her Federal Complaint (*see* Dkt. No. 1, ¶¶ 10, 54), presumably to show that Plaintiff exhausted her administrative remedies. That document is therefore incorporated by reference and

---

[7] Notably, Defendants' copy shows Plaintiff's address (listed as 121 Higby Road, Utica, NY 13501), whereas the address is blank on Plaintiff's copy; further, Plaintiff's copy, unlike Defendants' copy, has a "FILE COPY" stamp, whereas Defendants' copy, unlike Plaintiff's copy, has "RECEIVED," "DEC 20 2016," and "DIVERSITY MANAGEMENT" stamps. (*Compare* Dkt. No. 1-1, at 2, *with* Dkt. No. 8-3, at 1).

9

properly considered as part of the pleadings. *See Yung v. Lee*, 432 F.3d 142, 146 (2d Cir. 2005)
("[W]e also consider on a Rule 12(b)(6) motion 'any written instrument attached to [the
complaint] as an exhibit,' 'any statements or documents incorporated in it by reference,' and any
document not incorporated but that is, nevertheless, 'integral' to the complaint because the
complaint 'relies heavily upon its terms and effect.'" (quoting *Chambers*, 282 F.3d at 152));
*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has
actual notice of all the information in the movant's papers and has relied upon these documents
in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule
56 is largely dissipated."). Accordingly, the Court denies Plaintiff's conversion request.

## B.    Timeliness of Discrimination and Hostile Work Environment Claims

### 1.    Receipt of the EEOC Notice

While the documents that Defendants attached to the motion to dismiss do not warrant
the conversion of the motion into one for summary judgment, Defendants have nevertheless
injected a factual dispute concerning the date on which Plaintiffs received the EEOC's December
16, 2016 notice. The timing is relevant because, according to Defendants, "[i]t is well settled that
under Title VII, a claim must be filed in federal court within 90 days of the plaintiff's receipt of a
right-to-sue letter from the EEOC." (Dkt. No. 8-4, at 5 (citing 42 U.S.C. § 2000e-5(f)(1))).

In her Federal Complaint, Plaintiff alleges that the notice was "***mailed*** to [her] on June 1,
2017." (Dkt. No. 1, ¶ 12 (emphasis added)). The Federal Complaint does not expressly state that
Plaintiff never received the notice prior to June 1, 2017. But if the Court draws all reasonable
inferences in Plaintiff's favor, as it must as this stage, the implication is that Plaintiff received the
notice for the first time on or after June 1, 2017. Defendants contest this version of the facts by
relying on the presumption that "a plaintiff received his or her right to sue letter three days after
its ***mailing***." (Dkt. No. 8-4, at 5 (emphasis added)). Because the notice lists December 16, 2016

as the "Date Mailed" (Dkt. No. 1-1, at 2), Defendants estimate that Plaintiff should have received the notice on December 20, 2016,[8] which is also the date on which DOCCS purportedly received it. (*Id.*). Based on this presumption, Defendants argue that Plaintiff filed her Federal Complaint "185 days from December 20, 2016, well beyond the 90-day limit." (*Id.*). Plaintiff counters that her claims are timely because, even if the presumption applies, Plaintiff received the notice "three days after June 1, 2017," as this is "the day the right to sue letter was ***mailed***." (Dkt. No. 9, at 8 (emphasis added)). In addition, Plaintiff attempts to rebut the presumption by offering a sworn affidavit stating that she "never received" the EEOC's notice in December 2016 and that "the first time [she] saw the Right-to-Sue letter . . . was after [her] attorney received these envelopes mailed on June 1, 2017."

The 90-day time limit that Defendants cite is in the nature of a statute-of-limitations affirmative defense, *see Gardner v. Honest Weight Food Co-op., Inc.*, 96 F. Supp. 2d 154, 157 n.2 (N.D.N.Y. 2000), on which Defendants have the burden of proof, *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 230 (2d Cir. 2014) ("Because a statute of limitations is an affirmative defense, [the defendant] bears the burden of proof to show it bars the claims."). Since the Federal Complaint sufficiently alleges that Plaintiff did not receive the right-to-sue letter prior to June 2017, Defendants do not base their statute-of-limitations defense on allegations in the pleading or documents incorporated in it. *Cf. Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) (explaining that "in the statute of limitations context . . . dismissal is appropriate only if a complaint clearly shows the claim is out of time."). Rather, Defendants invoke the presumption that an EEOC right-to-sue letter is mailed on its

---

[8] The Court notes that December 20, 2016 is four days after December 16, 2016, but it is only three days if allowance is made for no mail service on Sunday, December 18, 2016.

notice date and received three days after its mailing, the effect of which is to shift the burden of production onto Plaintiff. Understandably, Plaintiff attempted to rebut the presumption by submitting an affidavit in opposition. *See Sherlock*, 84 F.3d at 526 ("If a claimant presents sworn testimony or other admissible evidence from which it could reasonably be inferred either that the notice was mailed later than its typewritten date or that it took longer than three days to reach her by mail, the initial presumption is not dispositive."); *Gardner*, 96 F. Supp. 2d at 159 ("The sworn affidavit submitted by Plaintiff is sufficient to create a genuine issue of fact about whether she received the Right-To-Sue letter on July 6, 1999 and, therefore, adequately rebuts the presumption set forth in *Sherlock* and Fed. R. Civ. P. 6(e).").

While the Court may consider the presumption and any rebuttal on summary judgment, that inquiry calls forth materials outside the pleadings that cannot be considered on a motion to dismiss. *See, e.g.*, *Dubreus v. N. Shore Univ. Hosp.*, No. 12-cv-940, 2012 WL 5879110, at *4, 2012 U.S. Dist. LEXIS 165767, at *13 (E.D.N.Y. Nov. 20, 2012) (finding that the plaintiff's declaration concerning her receipt of the EEOC's right-to-sue letter "creates an issue of fact as to when the 90-day limitations period was triggered which cannot properly be decided in the context of a Rule 12(b)(6) motion to dismiss"); *Shearer v. Cub Foods*, No. 05-cv-2159, 2006 WL 737030, at *2, 2006 U.S. Dist. LEXIS 26366, at *5-6 (D. Minn. Mar. 20, 2006) (declining "to apply the three-day presumption at this stage" because there was "an issue of fact regarding when plaintiff received her notice of right to sue"). Moreover, the record is at this point insufficiently developed to permit conversion to a summary judgment motion. *See Braxton v. Erie Cty. Dist. Atty.*, No. 06-cv-311A, 2008 WL 4426021, at *6, 2008 U.S. Dist. LEXIS 73547 (W.D.N.Y. Sept. 25, 2008) (declining to convert a motion to dismiss into a motion for summary judgment so the Court may rule "upon a more developed factual record following discovery");

*Lord v. Babbitt*, 943 F. Supp. 1203, 1210 (D. Alaska 1996) (denying conversion of a motion to dismiss because "[t]he existing record will not permit resolution of the notice issues"). Plaintiff has not had an opportunity, for example, to respond to Defendants' charge that "Plaintiff failed to give the EEOC notice of the proper address at which to reach her." (Dkt. No. 11, at 10). The parties can renew their timeliness arguments at the summary judgment stage, after a fuller factual record has been developed. For now, it suffices that the Federal Complaint alleges that the EEOC's notice was mailed (and therefore received) in June 2017. *See Salerno v. City Univ. of N.Y.*, No. 99-cv-11151, 2002 WL 31856953, at *4, 2002 U.S. Dist. LEXIS 24454, at *13 n.6 (S.D.N.Y. Dec. 19, 2002) (denying a motion to dismiss Title VII claims and declining to apply the three-day mailing presumption where "the complaint itself alleges non-receipt"). Consequently, the Court denies as premature Defendants' motion to dismiss the first and second causes of action on statute-of-limitations grounds.

## 2.    Notification by Attorney General

Plaintiff raises an additional reason why her action is not time-barred. According to her reading of 42 U.S.C. § 2000e-5(f)(1),[9] the 90-day time limit for bringing Title VII claims against a government entity in federal court begins to run not when the EEOC issues a right-to-sue letter but when the U.S. Attorney General notifies a claimant of her right to sue if the Attorney General decides not to file a civil action against the government entity within 180 days of the

---

[9] In relevant part, § 2000e-5(f)(1) reads as follows:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . .

administrative complaint. (*See* Dkt. No. 9, at 9-10 (citing *Brisbane v. Port Auth.*, 414 F. Supp. 604, 605 (S.D.N.Y. 1976))). Because Plaintiff purportedly never received a notice from the Attorney General, she argues that the 90-day period never commenced and that her Federal Complaint was timely filed after the initial 180-day period. (*See id.*). Defendants contend that *Brisbane* is distinguishable because, in that case, the EEOC represented that the Justice Department would send the plaintiff a right-to-sue letter. (Dkt. No. 11, at 7-8). Defendants have not, however, responded to Plaintiff's specific statutory interpretation argument and, in light of the Court's ruling, there is no need to reach this issue now.[10]

### C.    Exhaustion of Gender Discrimination Claims

Defendants contend that, even if Plaintiff's employment discrimination and hostile work environment claims under Title VII are timely, her "gender discrimination claims" must be dismissed for failure to exhaust administrative remedies because Plaintiff "only checked the box indicating 'sexual orientation,' leaving the 'sex' box—which included boxes for female and male—blank." (Dkt. No 8-4, at 5-6). According to Defendants, the First Administrative Complaint nowhere "indicate[s] she believes she has been discriminated against based on her gender," as opposed to being "discriminated against based on her sexual orientation." Relying on the "reasonably related" exception to the exhaustion requirement, Plaintiff responds, in relevant part, that "the allegations of gender discrimination and hostile work environment in the [Federal] Complaint are within the scope of an investigation reasonably expected to grow out of

---

[10] There appears to be some split of authority on the issue. *See Zamora v. City of Houston*, No. 07-cv-4510, 2008 WL 3852416, at *6, 2008 U.S. Dist. LEXIS 62534, at *22-25 (S.D. Tex. Aug. 15, 2008) (discussing split of authority). *Compare Hiller v. Oklahoma ex rel. Used Motor Vehicle & Parts Comm'n*, 327 F.3d 1247, 1250-51 (10th Cir.2003) (holding that Attorney General must issue right-to-sue letter in cases involving government respondents), *and Hendrix v. Mem'l Hosp.*, 776 F.2d 1255, 1257 (5th Cir. 1985) (same), *with Dougherty v. Barry*, 869 F.2d 605 (D.C. Cir. 1989) (holding that EEOC may issue right-to-sue letter, even in cases involving government respondents, upon dismissal by the EEOC for lack of reasonable cause), *Thompson v. Conn. State Univ.*, 466 F. Supp. 2d 444, 449-50 (D. Conn. 2006) (same), *and Spencer v. N.Y.C. Transit Auth.*, No. 95-cv-4779, 1999 WL 51814, at *13, 1999 U.S. Dist. LEXIS 408, at *37-39 (E.D.N.Y. Jan. 14, 1999) (same).

Plaintiff's" First Administrative Complaint because she "specifically noted in her complaint filed with the DHR that the basis of her claim of discrimination is the fact that she was a 'gay female' officer" and she described "the different treatment afforded to male officers and the hostile work environment she was subjected to at work." (Dkt. No. 9, at 11-12). In their reply, Defendants dispute those assertions, stating that the First Administrative Complaint is "devoid of any allegations that different treatment was afforded to male officers," and, as a result, the EEOC did not have "adequate notice" of her gender discrimination claims. (Dkt. No. 11, at 13).

Although a plaintiff must exhaust her administrative remedies before bringing an action under Title VII, "[c]laims not raised in an EEOC complaint . . . may be brought in federal court if they are 'reasonably related' to the claim filed with the agency." *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (quoting *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). One type of claim that courts have determined is reasonably related to an EEOC charge concerns conduct that "would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge' that was made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001) (quoting *Butts*, 990 F.2d at 1402). In making this determination, courts must focus "on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (quoting *Freeman v. Oakland Unified Sch. Dist.,* 291 F.3d 632, 637 (9th Cir.2002)). Because it is the "substance of the charge and not its label that controls," *Alonzo v. Chase Manhattan Bank, N.A.*, 25 F. Supp. 2d 455, 458 (S.D.N.Y. 1998), where a plaintiff later asserts an additional basis for discrimination, "[t]he central question is whether the complaint filed with the EEOC gave that agency 'adequate notice to investigate discrimination on both bases,'" *Williams*, 458 F.3d at 70 (quoting *Deravin*, 335 F.3d at 202).

15

As an initial matter, the Court notes that, in the first paragraph of the First Administrative Complaint, Plaintiff charged DOCCS "with an unlawful discriminatory practice relating to employment . . . because of *sex*, sexual orientation." (Dkt. 8-2, at 1 (emphasis added)). Although Defendants rightly point out that Plaintiff only checked the "Sexual Orientation" box (writing in "Gay Female") and left the "Sex" box blank (*see id.* at 3), the reference to sex discrimination at the top of the First Administrative Complaint weighs against putting too much significance on what box was checked, unlike the situation in *Holmes v. Fresh Direct*, No. 13-cv-4657, 2015 WL 4885216, at *5, 2015 U.S. Dist. LEXIS 102638, at *12 (E.D.N.Y. Aug. 4, 2015), where "the absence of a checkmark" was consistent with the rest of the claimant's allegations. And while Defendants are correct that a "single reference" to Plaintiff being a "Gay Female" does not by itself make out a claim for gender discrimination (Dkt. 11, at 14), *see Holmes*, 2015 WL 4885216, at *6, 2015 U.S. Dist. LEXIS 102638, at *15 (finding that "Plaintiff's single reference to the fact that she is a black female does not suffice to exhaust her administrative remedies with respect to a claim of sex discrimination"), "[t]he more critical analysis is whether there is any explanation or description supporting a particular claim," *Cooper v. Xerox Corp.*, 994 F. Supp. 429, 436 (W.D.N.Y. 1998).

Having reviewed the description of the conduct complained of in the First Administrative Complaint, and reading it "as liberally as possible," *Walsh v. Nat'l Westminster Bancorp., Inc.*, 921 F. Supp. 168, 172 (S.D.N.Y. 1995), the Court finds that Plaintiff sufficiently described events that would put DOCCS on notice that she was alleging discrimination and a hostile work environment based on gender discrimination.[11] She related an episode in which "someone ha[d]

---

[11] Further, the question of whether sexual orientation discrimination constitutes gender discrimination under Title VII is currently before the Second Circuit Court of Appeals. *See Zarda v. Altitude Express*, 855 F.3d 76 (2d Cir. 2017), *reh'g en banc granted*, No. 15-3775 (argued Sept. 26, 2017).

drawn a beard and mustache" on a photograph of hers on the "union board," which Defendant

Hess allegedly did "not remove" as "[p]art of his bullying, discrimination tactic." (Dkt. No. 8-2,

at 5-6). When Plaintiff asked a colleague why the photograph remained, the colleague allegedly

stated that Defendant Hess did not like her because "you don't like cock." (*Id.* at 6). From

Plaintiff's description, it is reasonable to infer that her male colleagues did not have their

photographs drawn over with a beard and mustache. Further, Plaintiff questioned why Defendant

Hrovat raised the issue of the gender type of a transgender parolee, and why Defendant Hrovat

said she could not tell whether the parolee was a "he or she or she or he." (Dkt. No. 8-2, at 7).

While Plaintiff characterized these episodes as relating to her sexual orientation (*id.* at 6-7), they

sufficiently invoke gender stereotypes to put Defendants on notice that Plaintiff was complaining

of gender discrimination, particularly in light of Plaintiff's complaint charging unlawful

discrimination "because of sex, sexual orientation." (Dkt. No. 8-2, at 1). *Cf. Christiansen v.*

*Omnicom Grp., Inc.*, 852 F.3d 195, 200 (2d Cir. 2017) (noting that, in *Price Waterhouse v.*

*Hopkins*, 490 U.S. 228, 250 (1989), "the Supreme Court held that adverse employment action

rooted in 'sex stereotyping' or 'gender stereotyping' was actionable sex discrimination").

Therefore, the Court denies Defendants' motion to dismiss on exhaustion grounds.

## V.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 8) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Dated: November 2, 2017
       Syracuse, New York

Brenda K. Sannes
U.S. District Judge